## FALL v. JOHNSON.

1. The matter being within the exercise of judicial discretion, the rulings of the trial court upon offers to prove specific facts, at the time apparently inadmissible, will not be disturbed unless substantial injury has resulted therefrom.

2. A plea of payment in full is ordinarily good, without specifying the time, place, or manner thereof; and when money has either been advanced to

the owner, by one to whom he has delivered property for the purpose of sale with the express understanding that the same shall be deducted from the proceeds of such sale when consummated, or when he has directed the person to whom he thus intrusted his property to pay a portion of the proceeds thereof to a third person, from whom he had obtained money on account of the delivery and prospective sale of his property, and such payment has actually been made, the facts and circumstances of the transaction may be shown under a plea of payment in an action to recover, less certain other credits, the amount received for the property.

(Syllabus by the Court. Opinion Filed Jan. 3, 1896.)

Appeal from circuit court, Pennington county. Hon. A. J. PLOWMAN, Judge.

Action on contract for sale of property. Judgment for plaintiff, and defendant appeals. Reversed.

The facts are stated in the opinion.

*Charles W. Brown*, for appellant.

A general allegation of payment admits evidence of payment in cash or in any other mode or by any agency. Abb. Trial Ev. 799; Pom. Rem. § 701; 18 Am. & Eng. Ency. Law, 254; Farmer v. Sherman, 33 N. Y. 69; McLaughlin v. Webster, 141 *Id.* 76; Johnson v. Breedlore, 6 N. E. 906; Ruggles v. Gatton, 50 Ill. 412; Morehouse v. Northup, 33 Conn. 380; Walcott v. Smith, 15 Gray. 537; Stebbins v. Lardner, 2 S. D. 127; Green v. Hughett, 59 N. W. 225; Beals v. Ins. Co., 36 N. W. 522; Tolman v. Ins. Co., 1 Cush. 173. An amendment should be allowed where it does not change substantially the defense already made. Comp. Laws, §§ 4938 and 4941; Jenkinson v, Vermillion, 52 N. W. 1066; Johnson v Burnside, *Id.* 1057; Kelsey v. Railroad, 45 *Id.* 202. When an agent has authority to employ sub-agents, he will not be liable for the negligence or misconduct of his sub-agents, if he has used due care in his selection. 1 Am. & Eng. Ency. Law. 394; 1 Parson on Contracts, 84; Darling v. Stanwood, 14 Allen. 504; Dorchester v. New England, 1 Cush. 177; Barnard v. Coffin, 141 Mass. 37.

*Smith & Brown*, for respondent.

When the evidence before a jury is substantially conflicting, this court will not substitute its own judgment for that of

the jury.  Johnson v. Gilmore, 6 S. D. 276, 60 N. W. 1070; Evert v. Kleimenhagen, 6 S. D. 221; 60 N. W. 851; Jeausch v. Lewis, 1 S. D. 609; 48 N. W. 129; Brewing v. Millenz, 5 Dak. 136, 37 N. W. 728; Phillip v. Pillsbury, 5 Dak. 67.  One cannot, under a plea of payment, avail himself of a counter claim.  18 Am. & Eng. Ency. Law 254; Wagner v. Mars, 20 S. C. 533; Ulsch v. Muller, 143 Mass. 379; Grinnell v. Spink, 128 *Id.* 251.

FULLER, J.  For a cause of action, plaintiff claims to have delivered a span of horses to the defendant, under a contract that the team would be placed in a car with certain other horses, and be shipped to Vermont for the purpose of sale; that the defendant agreed to pay plaintiff the entire amount for which the horses might be sold, less the expense of shipping, which proved to be $35.54; that, although the horses sold in Vermont for $250, defendant has paid but $67.66, including the expense of shipment, and there is still due and unpaid $182.44, for which he demands judgment.  Defendant admitted that the horses were shipped at an expense of $35.54, and sold for $250, and, as a defense, states that it was mutually agreed between the plaintiff and himself that the horses were to be sold at the best obtainable price, pursuant to the direction of plaintiff, and that all the expenses of shipping, keeping, feeding, and caring for said horses until sold should be deducted from the price obtained, and that the balance •thereof should be paid over to plaintiff; that $135.54 was the actual amount which defendant was required and compelled to pay for shipping, keeping, feeding, and caring for said horses before they were sold; and that, before the commencement of this action, he paid to plaintiff $114.46, which was the full amount due after deducting from the selling price the expense which plaintiff agreed to and was liable to pay under the contract.  The case was tried to a jury, and upon a verdict for $198.86 against the defendant, and in favor of plaintiff, the court entered a judgment; and the defend-

ant appeals therefrom, and from an order overruling a motion for a new trial.

Owing, apparently, to the dullness of the market, the horses were not sold promptly; and a Mr. Chase, who went through with the car, for the purpose of caring for, and assisting in the sale of, the horses, returned after remaining in Vermont about four weeks, and respondent's horses were left and kept in a livery and feed stable five months, before a satisfactory purchaser appears to have been found, at an expense of $20 per month, which appears to have been deducted in the East from the $250 received for the team. From evidence admitted on the part of appellant, and afterwards by the court stricken from the record, and withdrawn from the jury, it fairly appears that respondent, after the horses were shipped, and before they were sold, applied for, and received from or through appellant, $75, under an arrangement that the same was to be retained out of the money when received from the sale of the horses. In any event, a note for $80 made by respondent, payable to and endorsed by appellant, was delivered to a third person, from whom appellant received $75, which was turned over to respondent. Appellant testified, in effect, that this money was obtained and advanced on account of the sale of the horses, and that afterwards, at respondent's special instance and request, he actually paid the amount of the note and accrued interest to the holder thereof, and had deducted the same from the amount for which the horses were sold.

Concerning the note which was produced by appellant and offered for identification, respondent was permitted, on cross-examination, to testify that he executed the same; but an objection being interposed by counsel, and sustained by the court, appellant's counsel proceeded no further with the witness upon that line. The theory upon which the court declined to permit appellant to attempt to show that pursuant to respondent's request and direction, and in accordance with the arrangements between the parties, he had paid a portion of the amount re-

ceived for the horses to the owner and holder of the note in question, was that such evidence could not be introduced in support of a plea of payment, and accordingly all evidence of the transaction was stricken out, and the court declined to allow counsel for appellant to make an offer of proof upon the record. While the practice of making an offer to prove specific facts which may be to the court at the time apparently inadmissible has the sanction of useage, the matter is within the sound discretion of the trial court, and its ruling upon such offers, or its refusal to permit the same to be made in writing or upon the record, will not be reversed unless substantial injury has resulted therefrom. In this instance the court was fully advised as to the nature and purpose of the evidence sought to be introduced, and the only question essential to a determination of this appeal is whether appellant was entitled under his answer, to prove that he had, in addition to the feed bill of $100 and the payments about which there was no dispute, paid out of the proceeds of the sale, by the request of respondent, and in accordance with a previous arrangement, the amount due on the note in question. If appellant was able to show that he was directed and authorized to pay the $80 note out of the money in his hands belonging to respondent, or that he had advanced money to respondent after receiving the horses, and before they were sold, under an agreement the effect of which was that the same should be treated as an advance partial payment of the amount for which the suit was brought, we think he should have been permitted to make such proof under his general allegation of payment. A plea of payment in full is ordinarily good, without specifying the time, place or manner thereof; and when money has either been advanced to the owner, by one to whom he has delivered property for the purpose of sale, with the express understanding that the same shall be deducted from the proceeds of such sale when consummated, or when he has directed the person to whom he thus intrusted his property to pay a portion of the proceeds thereof to

a third person, from whom he has obtained money on account
of the delivery and prospective sale of his property, and such
payment has actually been made, the facts and circumstances
of the transaction may be shown under a plea of payment in
action to recover, less certain other credits, the amount re-
ceived for the property.

We are therefore of the opinion that, in the present case,
evidence tending to show that appellant, who had money in his
hands belonging to respondent, had actually paid a portion
thereof, at the instance and request of the latter, in settlement
of a debt evidenced by a note which respondent owed to a third
party, was admissible; and all the material facts and circum-
stances connected with the transaction should have been ad-
mitted, and submitted to the jury, under proper instructions as
to what facts were necessary, as a matter of law, to constitute
payment; or if, in contemplation of a sale of the horses which
had been placed at his disposal for that purpose, appellant had
actually paid money to respondent, which had been procured
by the execution of the note in question, and delivered to and
been received by appellant as an advance partial payment of
the amount for which the suit was brought, with the under-
standing at the time that appellant should pay the note out of
the money for which the horses might sell, evidence that the
note had been thus paid in accordance with such agreement was
competent under the answer. "Payment may be made by an
arrangement whereby a credit is given or funds supplied by a
third party to the creditor, at the instance of the debtor. But
such an arrangement must be carried into actual effect, to have
all the force of payment." 2 Pars. Cont. (6 Ed.) 625. In
speaking of a transaction in principal similar to the present.
Chief Justice LAKE, in Hughes v. Kellogg, 3 Neb., at page 195
says: "In my opinion, this arrangement amounted substanti-
ally to what is termed 'payment by delegation,' as where a
debtor directs his banker to place to the credit of his creditor,
with his assent, a sum of money to be applied in payment of

his indebtedness to him.    Where this is done, and a transfer of the account actually made on the books of the bank, it is held to be equivalent to payment, even though the banker should become bankrupt, and the creditor thereby lose the money." Max Code Pl. 495.   It follows as a matter of course that respondent would be entitled to offer evidence in rebuttal, if it existed, tending to show a state of facts in relation to the transaction which would make the same available in the action as a counter-claim only, and from which the jury would be justified in finding, as a matter of fact, under the law as given by the court, that no payment of the amount had been made.   The evidence sought to be introduced being material and admissible under the pleadings, it was reversible error to exclude the same.

Other assignments of error, relating to the court's charge to the jury, and to the denial of appellant's application to amend his answer to conform to the view of the court, need not be noticed.   The judgment is reversed, and a new trial ordered.