REEVES, Respondent, v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant (FARMERS' STATE BANK OF BRUCE, SOUTH DAKOTA, Intervener).

(170 N. W. 575).

(File No. 4424.  Opinion filed January 30, 1919 )

1. **Insurance—Hail Insurance—Insured's Agent Adjusters, Joint Agents—Rule—Presumption.**

   Where insured under a hail insurance policy, wrote to a bank, stating: "I would like Messrs. Buck and Skarlarken to act in my stead in adjusting the loss," held, that said words, if standing alone would create a joint agency only, under the well established rule that, where one employs two or more to represent him in a business matter, the presumption is that such employees are joint agents.

2. **Principal and Agent—Several Agents, Joint Action—Instructions Re Authority of Single Agent——General Specification, Futility.**

   Where trial court, in a suit upon a hail insurance policy, upon plaintiff's request instructed that when a principal employs more than one agent to represent him in a matter of business, they are joint agents, the exercise of whose joint discretion is desired, and an act performed by one will not bind the principal; followed by an instruction as to power of one joint agent to bind his principal, and as to effect of ratification upon unauthorized act of an agent; defendant insurer having entered a general specification only to the instruction, in no manner pointing out any particular part excepted to, held, the specification was ineffective; it being appellant's duty to call trial court's attention to the particular part of the instruction it considered erroneous.

3. **Same—Several Insurance Adjuster Agents, Act of One, Whether Binding—Non-excepted-to Instruction, Presumption Re Exception to Other Instructions—Ground of Exception.**

   In such a suit, after instructing as above, the court gave the following unexcepted-to instruction:  "but if you find he appointed both Mr. Buck and Mr. Skarlarken, and only one acted, then the plaintiff would not be bound by the acts of that one "

Held, that not having excepted to the last instruction, it will
not be presumed that appellant took exception to that part of
the requested instruction above quoted; nor would trial court
be advised by said general exception that the sole ground of
exception was because court did not, instead of saying, "they
are joint agents," say, "they are presumed to be joint agents"—
the thing now complained of on appeal.

4. Insurance—Hail Insurance—Adjustment Through Agents—Re-
jected Tender—Attempted Readjustments—Time for Proof,
Insurer's Recognition of Liability After Expiration, Effect Re
Estoppel—Statute

The insured under a hail insurance policy, having appointed
two persons as his adjusters of loss thereunder, and insurer
having placed the matter of adjustment with an adjustment
company, whose adjuster, with one of plaintiff's agents, exam-
ined the fields, and the adjuster made out a purported "proof
of loss" which was executed by said single agent, and insurer
having tendered to plaintiff the amount so found, which tender
was rejected, when plaintiff wrote the adjustment company that
the proposed adjustment was inadequate and asking for an-
other adjuster to be sent; this followed by further unavailing
efforts to make another adjustment; insurer having conceded
some liability, and having given no notice that it would claim
release because of failure to furnish timely proof of loss; and
long after the stipulated period of furnishing proof of loss the
adjustment company wrote plaintiff that it was holding said
"proof of loss" and was" interested in knowing conditions in
connection," and that it would be necessary to dispose of certain
other adjustments before taking up plaintiff's loss; held, upon
the facts, and under Civ. Code, Sec. 1874, providing that all
defects in a notice of loss, or in preliminary proof thereof,
which insured might remedy, and which insurer omits to spec-
ify, without unnecessary delay, as grounds of objection, are
waived, and Sec. 1875, providing that delay in presentation to
insurer of notice of proof of loss, is waived if caused by any
act of his, or if he omits to make objection promptly and spec-
ifically and upon that ground—that insurer, by its course of
action, and especially by its recognition of liability after time
within which the policy required proof of loss to be made, is
estopped to claim non-liability because no proof of loss was
presented by insured.

5. Same—Timely Proof of Loss, Insurer's Failure to Object To, Ef-
fect—Statute as Part of Policy—Conflict Between Statute and
Policy, Effect.

Civ. Code, Secs. 1874 and 1875, concerning waiver of defects
or delay in notice of proof to insurer, were as much part of the
policy of insurance as though written therein, and are controll-

ing wherein their provisions conflict with those contained in the policy.

6. **Same—Defense of Non-proof of Loss, Unfavored—Waiver of Condition, To Save Forfeiture—Rule.**

The defense that no proof of loss was made under an insurance policy, is one not appealing to favor of courts; and a forfeiture so claimed will not be enforced if there be any reasonable ground on which to find the condition was waived.

7. **Same—Incapacity to Waive Proof of Loss, Policy Provision, Futility, Under Statute.**

An insurance company cannot contract in its policy to incapicitate itself from waiving proof of loss; in view of Civ. Code, Sec. 1874, providing in effect that defects in notice or preliminary proof of loss, which insured might remedy and which insurer omits to specify, without unnecessary delay, are waived, and Sec. 1875, providing that delay in presentation of proof of loss is waived, if caused by any act of insurer, or if he omits to promptly object upon that ground.

8. **Evidence—Recovery of Hail Insurance Loss—Injury from Hail, From Resulting Rust—Jury's Permissible Inference.**

In a suit to recover for loss under a hail insurance policy; it appearing that the grain not cut down by the hail was left thin and was set back in growth some two weeks; evidence having been received over insurer's objection that rust injured the crops that season, and that crops that matured early were not injured as much as those that matured late; held, that from the evidence jury could and naturally would infer that the crops were injured by rust more than they would have been if hail had not struck the grain and delayed its maturity; there being other evidence tending to make such inference certain.

9. **Insurance—Hail Insurance—Policy Restricting Liability To Hail Loss, Effect Re Loss From Rust After Hail—Rule of Damages.**

Under a hail insurance policy providing that insurer should not be liable except for such portion of loss as is traceable directly to hail, nor for any loss or damage to crops for any other cause or causes combined with hail, held, that for a loss resulting from two or more independent causes such as hail and rust working together, insurer would not be liable for any greater proportion of the loss than that caused by hail; while, as in the case at bar, the evidence showed that rust injured crops that season and that crops that matured early were not injured as much as those that matured late—not being the case of two independent causes working together; that insofar as the hail brought about a condition resulting in increased rust, and therefore a greater loss than would have been suffered in absence of such condition, to that extent insured's loss is 'traceable directly to hail" under a policy restricting liability to such

loss; that while insurer did not insure against loss by rust, yet if rust, or increased rust, was the result of the hail, then any loss from such rust, like lodging of grain by hail, is a loss directly traceable to the hail.

Appeal from Circuit Court, Brookings County. HON. CARL G. SHERWOOD, Judge.

Action by D. W. Reeves, against the National Fire Insurance Company, of Hartford, Connecticut, to recover for injury to corps by hail; the Farmers' State Bank of Bruce, South Dakota, a corporation, intervening. From a judgment for plaintiff, and from an order denying a new trial, defendants appeals. Affirmed.

*Cheever & Cheever,* and *C. O. Trygstad,* for Appellant.

*Hall, Alexander & Purdy,* for Respondent.

(1) To point one of the opinion, Appellant cited:

Unterberg v. Elder (N. Y.), 105 N. E. 834; Hawley, et al v. Keeler, et al., 54 N. Y. 115.

Respondent cited:

2 Corpus Juris, 668, Sec. 318; 669.

(3) To point three, Appellant cited:

31 Cyc. 1412-13.

(4) To point four, Respondent cited:

Norris v. Equitable Fire Insurance Association, 19 S. D. 114, 102 N. W. 306; Hitchcook v. State Insurance Co., 10 S. D. 271; 14 Ruling Case Law p. 1349, Sec. 521.

(5) To point five, Respondent cited:

Epiphany Roman Catholic Church v. German Ins. Co., 16 S. D. 17, 91 N. W. 332.

(7) To point seven, Appellant cited:

Cleaver v. Trader's Insurance Co. (Mich.), 32 N. W. 662; Gould v. Dwelling-house Ins. Co. (Mich.) 455; Weidert v. State Ins. Co. (Ore.), 24 Pac. 242.

(9) To point nine, Respondent cited:

Russell v. German Fire Ins. Co., 100 Minn., 528, 111 N. W. 400, 10 L. R. A. (N. S.), 326; 2 Words & Phrases, 49, Second Series; Schwindermann v. Great Eastern Casualty Co., 165 N. W. 982.

WHITING, J.  Defendant insured plaintiff's crops against damage by hail. The policy covered 431 acres of wheat, oats, barley, and flax; the same being insured in the sum of not to exceed $10 per acre, or $4,310. Suit was brought on this policy,

resulting in a verdict of $2,692 and interest. From judgment entered thereon, and from an order denying a new trial, this appeal was taken.

Appellant contends that respondent was not entitled to recover at all, because of his failure to furnish the proof of loss required by the policy; that respondent was not entitled to recover in excess of $381 for damage to wheat, oats, and barley, because of an alleged adjustment of such damages; and that respondent was not entitled to recover the amount found by the jury because such amount is excessive under the evidence and law.

[1, 2] We find it more convenient to first consider the alleged adjustment. The facts touching this matter are briefly as follows: Respondent was out of the state at time of the storm. Upon being advised by his wife that his crops had been injured by hail, he wrote a letter to the Farmers' State Bank, a bank located in his home town, in which, among other things, he stated:

"I would like Messrs. Buck & Skarlarken to act in my stead in adjusting the loss. * * *"

Skarlarken undertook to make proof of loss and to adjust same. Purporting to act as agent for respondent, he executed proof of loss, showing loss on wheat, oats, and barley in sum total of $381. This "proof of loss" was approved by the adjuster representing appellant, and the appellant afterwards tendered $381 in settlement for loss on wheat, oats, and barley. Respondent contends that by his letter he constituted Buck & Skarlarken his joint agents, and that Skarlarken, acting alone, was without power to enter into any agreement for adjustment of loss. It is perfectly clear that the words we have quoted from the letter would, if standing alone, create a joint agency only, under the well-established rule that, where one employs two or more to represent him in a matter of business, the presumption is that such employees are joint agents; but appellant contends that the remainder of the letter, together with other evidence introduced, was sufficient to warrant the jury in finding the agency of Buck & Skarlarken to be both joint and several. At respondent's request, the court, in addition to instructions given on its own motion, gave further and quite extensive instructions, a part of which was as follows:

"You are instructed that, when a principal employs more than one agent to represent him in the same matter of business, they

are joint agents, the exercise of whose joint discretion is desired, and an act performed by one * * * is not such an execution of authority as to bind the principal."

This was followed by an instruction as to the power of one joint agent to bind his principal, and as to the effect of ratification of an unauthorized act of an agent. The appellant entered a general exception to all of the requested instructions, setting the same out in full, but in no manner pointing out any particular part excepted to. It now complains of only that part which we have quoted. The exception taken was ineffective. It was appellant's duty to call the trial court's attention to the particular part of these instructions it considered erroneous. As early as the case of Kennedy v. Falde, 4 Dak. 319, 29 N. W. 667, it was held:

"An objection or exception should state the point with accurate clearness, so that there can be no question in the appellate court relative to what the question is. Exceptions to the charge of a court should point out the specific portions of the charge excepted to. * * * The office of an exception is to point out some specific error in law, and the counsel should, by his exception, lay his finger upon the precise * * * error in the charge. * * *"

[3] We think this case well illustrates the soundness of the rule, so early announced and so consistently adhered to in this jurisdiction. Immediately following the instructions excepted to came an instruction unexcepted to, and which in part was as follows:

"But if you find he appointed both Mr. Buck and Mr. Skarlarken, and only one acted, then the plaintiff would not be bound by the acts of that one. * * *"

Certainly, not having excepted to this last instruction, it would not be presumed that appellant took any exception to that part of the "requested instruction" which we have quoted; moreover, the trial court would in no manner be advised by the exception that the sole and only ground of exception which was in appellant's mind was because the court did not, instead of saying, "they are joint agents," say, "they are presumed to be joint agents"—the thing now complained of. The only assignment of error, and therefore, as we must presume, the only specification of error, directed to the instruction above considered, merely claimed error in the whole instruction, quoting same, and in no manner pointing out wherein same was erroneous. Such an assignment or speci-

fication presents no error. Hedlun v. Holy Terror Mining Co., 16 S. D. 261, 281, 92 N. W. 31; Mahoney v. Smith, 170 N. W. 140, decided at this term.

[4] The policy sued on contained provisions to the effect that formal proof of loss must be made within 60 days after loss is suffered, that no denial of liability or other act on the part of the insurer should waive or dispense with the furnishing of such proof of loss, and that without such proof of loss the appellant should not be liable. The facts are undisputed. As above noted respondent was away from home at the time of the storm. He did not return for some three weeks thereafter. At request of respondent's wife, Skarlarken, in respondent's name, gave to appellant written notice of loss and the estimated amount thereof. Appellant turned the matter of adjustment over to an adjustment company. This company sent the adjuster, who, with Skarlarken, examined the fields. The adjuster made out what purported to be a proof of loss on wheat, oats, and barley, and, as above noted, this was executed by Skarlarken, purporting to act as agent for respondent. The adjuster approved the claimed loss, and tender was made and rejected, as above noted. This "proof of loss" was sent to appellant by the adjuster, and was retained by appellant. After rejecting the tender, respondent wrote the state agent of appellant, advising such agent that, in his opinion, the purported adjustment was exceedingly inadequate, that his damage was several times the per cent. allowed and asked that another adjuster be sent. Then followed other correspondence and telephone communications, which finally resulted in another adjuster being sent about September 1. No agreement was reached, but, after a personal interview between the state agent and respondent, this adjuster was again sent. Again no agreement was reached. Then followed further correspondence, which resulted in this adjuster coming a third time, on or about November 8, almost 5 months after the storm. No agreement was reached. At no time, until it interposed its answer herein, did appellant assert total nonliability, or otherwise give notice that it would claim to be released because of failure to furnish proof of loss. Upon the other hand, appellant at all times conceded some liability, and the only matter apparently at issue between the parties was as to the just amount thereof. On September 22, long after respondent had rejected the

tender based on the claimed adjustment, and long after the 60-day period for furnishing proof of loss, the adjustment company wrote respondent:

"We are holding a completed proof made up by our first representative. This proof is signed, and we are now interested in knowing conditions in connection. Our adjusters are now busily engaged in connection with corn losses, and * * * it will be necessary to dispose of them before again taking up your loss."

[5] Sections 1874 and 1875, C. C., read:

"All defects in a notice of loss, or in preliminary proof thereof, which the insured might remedy and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived.

"Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by any act of his, or if he omits to make objection promptly and specifically upon that ground."

These sections were as much a part of the policy of insurance as though written therein, and are controlling wherein their provisions conflict with those actually contained in the policy. Epiphany R. C. Church v. German Ins. Co., 16 S. D. 17, 91 N. W. 332. As said in Teasdale v. City of New York Ins. Co., 163 Iowa, 596, 145 N. W. 284, Ann. Cas. 1916A, 591, in speaking of a defense based on claim that no proof of loss was made:

"It is a defense which does not appeal to the favor of courts, and a forfeiture so claimed will not be enforced, if there be any reasonable ground on which to find that the condition has been waived."

[6] Under the sections above quoted, appellant, by its course of action, and especially by its recognition of liability long after the time within which the policy required proof of loss to be made, cannot now be heard to say that it is not liable because no proof of loss was presented by respondent. Hitchcock v. State Ins. Co., 10 S. D. 271, 72 N. W. 898; Providence Ins. Co. v. Wolf, 168 Ind. 690, 80 N. E. 26, 120 Am. St. Rep. 395. The following from the case of Larkin v. Glenn Falls Ins. Co., 80 Minn. 527, 83 N. W. 409, 81 Am. St. Rep. 286, is peculiarly applicable to this case under our statute:

"The company having become possessed of all facts necessary to a determination of the question of its liability, and having ex-

pressly recognized its liability, its conduct was certainly such as to lead the insured to the belief that formal proofs would not be required."

In the case of Ring v. Phœnix Assur. Co., 164 Pac. 303, 100 Kan. 341, a suit to recover upon a hail insurance policy and where, as here, it appeared there had been a tender by the insurer, the court said:

"In this state of affairs the defendant is in no condition to invoke the doctrine that the provisions of the policy could not be waived; for it had in fact and in law waived them."

[7] We do not wish to be understood as even intimating that an insurer can, by any provision in a policy, incapacitate itself from waiving proof of loss. We will leave the determination of that question for the future; suffice it to say that it cannot so contract so long as our statutory law remains unchanged.

[8] There was ample evidence to support the verdict. The serious question before us is whether the jury could properly be allowed to consider some of it. The storm occurred June 12. The grain not cut down was left thin, and was set back in its growth some two weeks. Over the objection of appellant, evidence was received showing that rust injured the crops that season, and that the crops that matured early were not injured as much as those that matured late. From this the jury could and naturally would infer that respondent's crops were injured by the rust more than they would have been, if the hail had not struck the grain and delayed its maturity. There was other evidence that would tend to make such inference a certainty. Appellant objected to the receipt of all evidence relating to the retarding of crops and to the increased rust resulting therefrom, on the ground that the policy only covered loss or damage resulting directly from hail. Appellant relies upon a provision of the policy that the insurer should— "not be liable, * * * except for such portion as is traceable directly to hail, for any loss or damage to any of the crops herein described for any other cause or causes combined with hail. * * *"

[9] Under this provision, where loss results from two or more independent causes working together, the insurer would not be liable for any greater proportion of the loss than that caused by the hail. Thus, in the case of a hailstorm, which in and of itself would have caused little damage, but which was accompanied by

a cloudburst, causing great damage, no recovery could be had for that portion of the damage caused by the cloudburst. But here we do not have two independent causes working together. The case before us is much the same as one where hail lodges, but does not cut off, the grain, and the grain eventually matures, but, owing to its lodged condition, fills poorly and is a short crop. In the one case, the hailstorm is not the cause of the cloudburst, and therefore in no sense the cause of the loss that results from the cloudburst; in the other case, the hail causes the grain to lodge, and the lodging of the grain results in the loss—the loss is directly traceable to the hail. The case before us is not upon all fours with either of the above illustrations, but, in so far as the hail brought about a condition that resulted in increased rust, and therefore a greater loss than would have been suffered, if such condition had not existed, just to that extent is respondent's loss "traceable directly to hail."

Appellant did not insure against loss by rust, but it did insure against loss by hail; and if rust or increased rust was the result of the hail, then any loss from such rust or increased rust, just like loss from the lodging of grain by hail, is a loss directly traceable to the hail. Thus, in the case of Schwindermann v. Great Eastern Casualty Co., 165 N. W. 982, a policy covering personal injuries had a provision to the effect that it should not cover loss from injuries resulting from hernia—it was held that this provision had no application where the insured received an injury from which hernia resulted. In like manner a policy providing that the insurer shall not be liable for that portion of a loss that flows from other causes than hail has no application where loss or increased loss comes from a cause brought about by hail.

There were numerous exceptions to rulings upon admission of evidence, which we deem it unnecessary to discuss. The most of them are ruled by the matters we have discussed, and it is clear to us that no prejudicial error is shown by the record, and that, on the other hand, the record discloses that the verdict and judgment are eminently just.

The judgment and order appealed from are affirmed.